THE MERIDEN BRITANNIA COMPANY *vs.* WILLIAM ROGERS.

Hartford Dist., Oct. T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The defendant had entered into a contract with the plaintiffs under which, in consideration of the use of certain trade marks and of his services, they were to pay him $500 a month for ten years, the term expiring in 1878. In 1873 G, a creditor of the defendant, brought suit against him and garnisheed the plaintiffs. He obtained judgment the same year, and, failing to collect it of the defendant, brought an action of *scire facias* against the plaintiffs. This action remained in court until 1882, when judgment was rendered in it in favor of G. After the service of the garnishee process on the plaintiffs in 1873 they continued to make the monthly payments to the defendant until the termination of the contract in 1878, and had no money of his in their hands in 1882. Having paid the judgment against them in the *scire facias* case, the plaintiffs brought suit to recover the amount of the defendant. Held, that they were entitled to judgment for the amount.

The right of the defendant to receive the $500 per month under the contract was conditioned upon his securing the plaintiffs against the right of any other parties to use the trade marks. Certain parties did use and claimed the right to use one of the trade marks, until the matter

was arranged four years later by the plaintiffs, at their own cost. The plaintiffs, however, began at once to pay the defendant monthly a less sum than $500, which he received without complaint of its insufficiency, and at the end of the four years they released him from the condition stated and agreed thereafter to pay the $500 per month. This sum the defendant regularly received, and finally the last payment under the contract, without demanding anything on account of the sum withheld during the four years. Held that the law would presume that he received and acquiesced in the last payment as being in full of all demands under the contract.

[Argued October 5th—decided December 16th, 1887.]

ACTION to recover for money paid to the use of the defendant; brought to the Superior Court in Hartford County, and tried to the court before *Phelps, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiffs. The case is sufficiently stated in the opinion.

*F. Chamberlin* and *J. P. Platt,* for the appellants.

1. The plaintiffs were not indebted to Rogers at the time they paid the Goodman judgment. The claim on the part of the defendant is that at that time they owed him the difference between the $500 a month and the reduced sum which they paid him before January 1st, 1872. But by the agreement of that date he was then to begin to receive the $500 per month, and there was no agreement to make up the deficiency in the former payments. Those payments he not only received at the time without claiming more, but when he began to receive the full $500 he made no claim that anything should be added to make up the deficiency. And he accepted the final payment without claim for more. In these circumstances he will be regarded as having accepted what was paid as in full of all that was due him, as it clearly was upon the facts. The plaintiffs in paying the Goodman judgment against them were paying it with their own money and not with money which was due to Rogers. As between the plaintiffs and Goodman the debt of Rogers had perhaps become their debt. As between the plaintiffs and Rogers, they having disposed of the effects of Rogers in their hands to his use by paying to him what they owed him, they were

paying the judgment against him and therefore paying his debt. And this they paid under the compulsion of the judgment against them.

2. The plaintiffs having paid the defendant's debt under compulsion of law, a special request to pay was not necessary to enable them to recover the amount of him. Such request will be implied. 1 Chitty Pl., 361; Chitty on Contracts, 594; 2 Greenl. Ev., § 114, and note 5; *Berlin* v. *New Britain*, 9 Conn., 179; *Post* v. *Gilbert*, 44 id., 14 to 16.

*C. R. Ingersoll* and *F. L. Hungerford*, for the appellee.

1. There was no assumpsit express or implied that the defendant would repay to the plaintiff the amount paid by it on account of the judgment in the Goodman suit. It will not be claimed that there was any express request on the part of Rogers that the Britannia Company should pay either the amount of the judgment against him in the Goodman suit, or the amount of the judgment obtained by Goodman against the company. It remains to be considered whether any implied request for such payment can be raised from the facts. Goodman sued Rogers, factorized the Meriden Britannia Company, and obtained judgment. Execution was issued and both Rogers and the company refused to pay. Thereupon *scire facias* was brought against the company, and after an ineffectual defense it was obliged to pay, not the judgment against Rogers, but the judgment against itself. In other words, it was found to have been indebted to Rogers at the time of the garnishment, and therefore under our statute (Gen. Stats., p. 462, § 40,) judgment was rendered against it, as for its own debt, to be paid out of its own estate. It appears the company ignored the process of garnishment and went on paying Rogers money as it became payable under the contract. If it really overpaid Rogers, which we deny, and if the payments were made under some mistake of law or fact, the right to recover such overpayments' might have been tested in a suit brought for that purpose. We need not discuss here the effect of such a suit, but we submit that, having been found indebted to Rogers

at the time of the garnishment in a sum greater than the amount of the Goodman claim, and having upon its refusal to pay upon execution rendered itself liable to pay as its own debt a judgment against itself, there was no implied request on the part of Rogers that it should pay such judgment, and therefore this action cannot be sustained. In case of garnishment the law may imply a request on the part of the principal debtor that the garnishee will pay over to the attaching creditor any moneys that he may have in his hands belonging to such principal debtor, or that he will turn over his, the debtor's, goods or effects, if any he have in his possession. There is no implied request that the garnishee will pay over moneys or turn out goods if he has none in his possession belonging to the principal debtor. That is to say, if the Meriden Britannia Company had in its hands moneys or property belonging to Rogers at the time of the Goodman garnishment, it may be so that the law would imply a request from Rogers that the company should turn over such moneys or effects to satisfy the Goodman judgment, if it were not otherwise satisfied by Rogers himself. But there could be no implied request from Rogers that the company should turn over moneys or property of his if it had none in its possession. If, therefore, this plaintiff paid, as it says it did, the Goodman judgment out of moneys of its own, and not with the money of William Rogers in its hands, there was no implied request for such payment and there can be no recovery in this suit.

2. The condition precedent to the payment of the sixty thousand dollars called for in the contract of 1868 was removed by the act of the plaintiff in 1872, and after its removal the entire debt of sixty thousand dollars came into existence, and that debt was not defeated by the happening of any condition subsequent in the contract. That contract began with a covenant on the part of the Meriden Britannia Company to pay William Rogers and William Rogers, Jr., " the sum of five hundred dollars per month, payable in advance each month, for the period of one hundred and twenty months, commencing on the 20th day of March, 1868."

This is a covenant to pay the gross sum of sixty thousand dollars for the use of certain trade marks for the period of ten years. The debt is one indivisible and entire sum, payable at stated times and in stated amounts. But, inasmuch as Birch & Pierce were then using one of the trade marks, it was provided that the payment of the money was not to commence until they should be enjoined, but when that should happen or the condition requiring it should be waived, the debt of sixty thousand dollars came into existence in its entirety and the payment thereof, not of a fractional part but of the whole, must commence. This part of the contract is thus construed in the able opinion of the court in the Goodman case, (50 Conn. 149:) " Until the defendant was made sure that no harm could come to it from the claims of Birch & Pierce it would neither pay nor come under obligation to pay; being certified upon that point it in 1872 withdrew this condition precedent and began to pay. Having possession of the exclusive right purchased, it established the existence of the debt for the price in its entirety by beginning and continuing to pay in advance instalments thereon as fractions of a whole. . . . . . It paid each instalment, not as an independent debt; not as the price in advance of the use of the mark for an isolated month; but as a constituent part of a debt for the gross sum of sixty thousand dollars for its use for a term of ten years, and as such the vendors received it." In view of this clear exposition of the meaning of the contract how could the court below do otherwise than render judgment for the defendant, independently of the important and controlling facts which will be next considered?

3. But aside from this express waiver indorsed on the contract in 1872, it clearly appears that immediately after the execution of the contract in 1868 the plaintiff waived the condition precedent as to Birch & Pierce, and commenced and continued to make payments under the contract, and intended these payments as part payment of the entire sum payable under the contract. That is to say, upon the 20th of March, 1868, William Rogers, father and son, entered

upon the performance of the contract, and fully performed the same except in the matter of enjoining Birch & Pierce, the father until his death in 1873, and the son until the termination of the contract in 1878. Thereupon also the Meriden Britannia Company, to wit, upon the 19th day of March, 1868, began to make payments to them, not as loans, nor as gifts, nor as advances, but under the contract, and intended these payments as part payments of the entire sum of sixty thousand dollars payable under the contract. Can it now be heard to say that it did not acknowledge the existence of the debt and by its own act waive the performance of that condition upon the happening of which the payment was to commence? Referring again to the opinion of the court in the Goodman case we read: "There can be no more convincing evidence that a man believes that he owes a debt than his voluntary payment; no more convincing evidence that he does not regard a given possibility as a condition precedent to his becoming indebted than his intentional and persistent disregard of it in his voluntary payment of instalments while it exists; no more convincing evidence that a man believes that a debt is due to him than the receipt of instalments upon it." We can understand now why it was that the Rogerses took no steps to enjoin Birch & Pierce. The company did not require it. Does anybody suppose for a moment that these men would have rendered four years of service, performing fully their part of the contract in every particular save this of enjoining Birch & Pierce, and would have taken no steps in that direction, if they had not fully understood that the company was not insisting upon the performance of that condition? And shall the company, having done the most pregnant act it was possible for it to do evincing its intention not to insist upon that condition, be permitted now to say that the debt, upon which it was making payments, did not then exist? *Bevin* v. *Conn. Mut. Life Ins. Co.*, 23 Conn., 244, 254; *Connelly* v. *Devoe*, 37 id., 570, 575.

PARDEE, J. On March 16th, 1868, a written contract was

signed by the plaintiff, of the first part, and by William Rogers and William Rogers, Jr., of the second part, the pertinent portions of which are as follows, viz :—

"This agreement, made and concluded this 16th day of March, 1868, by and between the Meriden Britannia Company, a joint stock corporation organized and existing under the laws of the state of Connecticut relating to joint stock corporations, and located in Meriden, party of the first part, and William Rogers and William Rogers, Jr., both of Hartford, Connecticut, parties of the second part, witnesseth :— That the party of the first part, in consideration of the promises, covenants and agreements of the parties of the second part, herein contained, hereby promises, covenants and agrees, to and with said parties of the second part, to pay the said parties of the second part, jointly or to the survivor of them in the case of the death of either of them, the sum of five hundred dollars per month, payable in advance each month, for the period of one hundred and twenty months, commencing on the 20th day of March, 1868. In consideration of said promise and agreement of said party of the first part, said parties of the second part do for themselves, both jointly and severally, covenant, promise and agree with said party of the first part as follows, to wit :—

"1st. That they will, and each of them will, during the period aforesaid, use the influence they have in the market to secure trade for said party of the first part in the articles of silver-plated forks and spoons and other silver-plated ware.

"2d. That said party of the first part shall have and enjoy the sole and exclusive right to the use of certain trade marks heretofore used by the parties of the second part, to wit :o '(Anchor) Wm. Rogers & Son, A A,' also, '1847, Rogers Bros., A 1,' upon all silver-plated forks and spoons made or sold by said parties of the first part after the 20th of March, 1868. And said party of the first part may authorize the use of said trade marks, or either of them, upon spoons and forks manufactured or sold by other parties, where said party of

the first part is to be benefited by the manufacture or sale thereof.

" That they, the said parties of the second part, will not, and neither of them shall, use either of said trade marks during all the period aforesaid, or any other trade mark or stamp in which the name of Rogers shall be used or form a part thereof, or engage in the business of making spoons or forks, either directly or indirectly.

" That they will not allow, suffer or permit any other person or persons, party or parties, to use, infringe upon or imitate either of the trade marks aforesaid, to wit: ' (Anchor) Wm. Rogers & Son, A A,' and '1847, Rogers Bros., A 1.'

" That they will not permit, suffer or allow any other person or party, persons or parties, to use the name of said William Rogers, or of the said William Rogers, Jr., upon any stamp or trade mark upon silver-plated forks and spoons or other plated ware during the period aforesaid; but that the right of the said party of the first part to the use of the said trade marks, and each of them, and to the use of the names of the said William Rogers and of said William Rogers, Jr., upon forks and spoons, shall be sole and exclusive to the said party of the first part.

" And whereas certain parties in Hartford, to wit: Thomas Birch and William J. Pierce, are now using the trade mark ' (Anchor) Wm. Rogers & Son, A A,' it is understood that the aforesaid payment is not to commence until said parties of the second part, at their own expense, shall have enjoined said Birch & Pierce, and prevented the use of said trade mark by them.

" And it is further understood and agreed that the payment of said sum shall at all times be dependent upon said party of the first part being fully secured and protected in the exclusive use of said trade marks, and that if any other person or party shall establish their right to use either of the aforesaid trade marks, said payments shall thereupon cease. But all suits that may be necessary to defend them in the use of said trade marks, shall be maintained at the expense of said parties of the first part, except only in the

case of said Birch & Pierce; and if necessary to use the names of said William Rogers and William Rogers, Jr., or either of them, in any suit for the protection of said parties of the first part, the same is hereby authorized."

On this contract the plaintiff indorsed the following:—

"WEST MERIDEN, Jan. 1st, 1872.—The Meriden Britannia Company agree to pay the full amount called for by this contract from January 1st, 1872, and to waive the performance by the parties of the second part of all conditions in this contract in relation to the use of the name Rogers by the concern in Hartford, and consider and admit the claims of Wm. Rogers and Wm. Rogers, Jr., to the full amount of five hundred dollars per month, as specified in this contract, to be in full force from January 1st, 1872, and thereafter until the expiration of this contract.

"MERIDEN BRITANNIA COMPANY,
"H. C. WILCOX, *President.*"

William Rogers died in 1873. The William Rogers, Jr., above named, is the defendant; and the discussion will proceed upon the assumption that he alone was the party of the second part.

It is quite certain that the plaintiff intended to buy and the defendant intended to sell the exclusive use of his time, skill, reputation and trade marks, during the period of ten years next following the date of the agreement; quite certain that the exclusive use of the name and trade marks was in the consideration of the plaintiff of the greatest worth to it. At the signing of the agreement both parties knew that Birch & Pierce of Hartford claimed and were exercising the right to use the trade mark " (Anchor) Wm. Rogers & Son, A. A." Therefore the plaintiff reserved to itself the right to withhold all payments under the contract until the defendant should secure it in the exclusive use stipulated for, although it expected him to go at once into its service and give his time, skill, and such partial use of his name and trade mark as was then possible. Accordingly on the succeeding day he began and thereafter continued to give his time, skill, and such use of the trade mark as he could

command. From the subject matter of the contract and the contemporaneous acts of the parties it is to be presumed that both expected such speedy termination of use by Birch & Pierce as is possible in cases where there is use without shadow of right. Therefore the contract expressly excused the plaintiff from making, and barred the defendant from demanding, any payment until the use by Birch & Pierce should be stopped, even if he should begin and continue to give time, skill, and a partial use of name and trade mark. Yet the plaintiff began on the first day of service and continued thereafter to pay something monthly in advance; presumably unwilling to furnish any occasion for an abandonment of the contract. But, contrary to this presumed expectation, not only was the defendant unable to stop the use of the trade mark by Birch & Pierce, but the latter were able to fortify themselves in a continued use by an injunction prohibiting him from denying, even, that they had such right. The result was that up to January 1st, 1872, nearly four years from the date of the contract, the defendant had not performed his agreement to put the plaintiff in possession of the promised exclusive use. But during this entire period of his failure to perform, the plaintiff paid and he received some money monthly in advance; so that such payments on January 1st, 1872, aggregated $16,555.49. If he had kept his agreement and payments had been made in accordance with the contract the aggregate at this last date would have been $22,767; a retention of $6,111.53 by the plaintiff. There was no period put to this account by settlement between the parties during this time. The plaintiff kept its record of the several payments in the form of charges to its expense account. On January 1st, 1872, presumably despairing of the ability of the defendant to prevent by force the use of the trade mark by Birch & Pierce, the plaintiff purchased a major interest in the Wm. Rogers Manufacturing Company, then owning Birch & Pierce's rights, and thus at its cost, by negotiation, secured that exclusive right which the defendant had agreed to deliver at his cost. By this purchase the parties were placed on Jan-

uary 1st, 1872, in the position in which it was assumed by
the contract they would be on the 19th of March, 1868; the
plaintiff in possession of the exclusive use of the trade mark,
and the defendant in a position to demand equal monthly
payments in full and in advance according to its terms;
with this important exception, that the exclusive right had
been obtained by and at the expense of the plaintiff and not
by or at the expense of the defendant. On January 1st,
1872, the plaintiff indorsed upon the contract a waiver of
the right therein reserved to withhold all payments until it
should be in possession of such exclusive use, and on that day
began and thereafter continued to pay the full sum of $500
monthly in advance according to the contract, until the expira-
tion thereof, and on February 28th, 1878, paid the defendant
the sum of $333.33 for the last twenty days of the term of ten
years, which sum he received without objection. As has
been stated, during the period between March 19th, 1868,
and January 1st, 1872, the defendant, while performing in
part, fell short of the full measure of his promise in that he
did not deliver the exclusive use of the trade mark; during
the same period the plaintiff, refraining from exercising its
right to withhold all payments, withheld a part; presumably
the withholding was according to the estimated measure of
injury resulting from the failure of the defendant to perform.
It is not found that at any time during the period between
March 19th, 1868, and January 1st, 1872, when payments of
some money monthly in advance were made, the defendant
objected to these as being too small, nor that on the last
named day at the beginning of the new period of full pay-
ment, or ever after, he demanded the whole or any part of
the sum of $6,111.53 retained by the plaintiff. There is
neither finding nor suggestion even that the plaintiff had or
claimed to have any other right to detain the money than
that resulting from the defendant's failure to perform. Not
only did the defendant on January 1st, 1872, when the
period and occasion of detention ended and that of full pay-
ment commenced, omit to demand more for the past, but at
the end of the ten years, when he received his final payment

under the contract and was about to leave the service of the plaintiff, he omitted to avail himself of the appropriate opportunity for such demand. Upon such detention on the one part and acquiescence on the other, the law founds the irresistible presumption that the defendant has received all he has ever claimed to be his due; that he received and acquiesced in this last payment as being in full of all demands under the contract.

In February, 1873, A. C. Goodman brought an action of assumpsit against the defendant, and on February 21st, 1873, garnisheed the plaintiff as having in its hands money belonging to the defendant. He obtained judgment against the defendant in December, 1873, for $2,749.57 damages and $32.28 costs. The latter not paying, Goodman took the necessary legal steps to enforce payment against the plaintiff as being indebted to the defendant. In *Goodman* v. *Meriden Britannia Company,* 50 Conn., 139, this court, upon the assumption that the state of facts existing in February, 1873, was the same as at the beginning, so far as performance by the defendant is concerned, determined that at the beginning the plaintiff came under an obligation to pay, and the defendant acquired the right to receive, the gross sum of $60,000, payable in one hundred and twenty equal monthly instalments in advance, and that on any day in said term the plaintiff owed the defendant the unpaid balance of said sum payable in instalments in the future, and therefore the debt was open to appropriation by his creditors by process of foreign attachment. For the purposes of that decision, the waiver indorsed by the plaintiff upon the contract on January 1st, 1872, placed the parties in the position which they would have occupied if no right to withhold payments had been reserved to the plaintiff. Therefore on February 21st, 1873, the plaintiff was indebted to the defendant to the extent of the unpaid balance of $60,000, in manner and form as above expressed, and came under legal compulsion to pay Goodman's claim against him. It did pay the amount thereof; namely, $4,183.39 damages and $138.83 costs. In February, 1873, two courses were open to it, either to detain from money

thereafter payable to the defendant sufficient to meet the demand of Goodman, and pay him, this being in law a payment to the defendant upon the contract; or, if it preferred for any reason not to put in peril the benefits to be derived from an uninterrupted execution of the contract by the defendant, it could continue to pay him full and equal monthly payments according to the letter of the contract, and rely upon repayment by him, if the pending suit by Goodman against it should result in a judgment in his favor, and compulsory satisfaction thereof by the plaintiff for the benefit of the defendant. The contract expired in 1878 and the defendant then received full payment thereunder. It was not then a matter of certain knowledge to either party that Goodman would be able to obtain judgment; he did not until 1882. In the plaintiff's replication to the defendant's special defense it is alleged that the regular monthly payments were made in advance to him according to the terms of the contract upon his repeated request and demand, and upon the supposition by both parties, based upon advice of counsel, that the contract was so drawn that no part of the sum to be paid to the defendant could be appropriated by his creditors. Upon the record he did not deny this allegation.

Upon the service of garnishee process upon the plaintiff by Goodman in 1872 it became its right to protect itself against possibility of loss by withholding payment from the defendant; it became his duty to refrain from demanding payment until he had placed the plaintiff beyond such possibility. Having knowledge of its legal right and his legal duty, if thereafter he received regular and full payments from it upon the contract, in advance monthly, he did so under a promise implied by the law that he would save it harmless from Goodman's suit, either by himself paying such judgment as the latter might recover, or if not thus, by repaying the amount. The defendant's act of receiving full payment, not having protected the plaintiff, was the legal equivalent of a request by him for a loan for his own use and benefit, the granting of such request, and the conse-

quent promise by him to repay, precisely as if no other transaction had taken place between them. Under the circumstances his reception of the money which would have become payable to him, had not the law sequestered it in the hands of the plaintiff for the payment of his debt to Goodman, was a request to it to pay for his accommodation from its own funds a debt which he justly owed and a promise by him to repay the money. He is responsible in the legal sense for all that has occurred; he requested Goodman to become and compelled him to remain his creditor; he requested the plaintiff to hold his money in its hands within reach of legal process by Goodman, and thereby become liable to a judgment against itself for his sole use and benefit; he has received from it all the money belonging to him in its hands; he has left it to pay, in addition, his debt to Goodman. The necessary legal consequence is that he must repay.

The plaintiff permitted all of the money of the defendant to go out of its hands into his own after service of process of garnishment by Goodman. By so doing, as between the latter and itself, it by force of law became liable to pay the defendant's debt to Goodman from its own funds; subjected its own property to the levy of an execution; and did in fact upon legal compulsion satisfy his judgment from its own money. But as between it and the defendant, the debt was in no sense that of the former; in every sense that of the latter; and he is not to be heard to contend that, inasmuch as the former stepped into his place at his request and for his benefit and became primarily liable to pay his debt and permitted him to fall into the position of surety, he can now insist that as between them it simply discharged its own obligation.

There is error in the judgment complained of.

In this opinion the other judges concurred.