**BRISTOL SAVINGS BANK, Appellant,**

v.

**Aaron P. SILVER, et al., Appellees.**

**Civ. No. 3:95CV288 (JBA).**

United States District Court, D. Connecticut.

Oct. 10, 1996.

Edward P. Jurkiewicz, Hunt, Leibert & Chester, Hartford, CT, David S. Hoopes, Mayo, Gilligan & Zito, Wethersfield, CT, for Bristol Savings Bank.

Brendan T. Flynn, Robert L. Hirtle, Jr., Barry S. Feigenbaum, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, CT, for Aaron P. Silver.

William F. Macreery, McCarthy, Fingar, Donovan, Drazen & Smith, White Plains, NY, for Pepsi–Cola Newburgh Bottling Co., Inc.

Richard M. Porter, Jeremy A. Mellitz, Bergman, Horowitz & Reynolds, P.C., New Haven, CT, for Paul Silver.

Brendan T. Flynn, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, CT, Stephen B. Delaney, Hartford, CT, for Elaine E. Silver.

Brendan T. Flynn, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, CT, Edward C. Taiman, Jr., Chorches & Novak, P.C., Wethersfield, CT, for Anthony S. Novak, Chapter 7 Trustee.

### Ruling on Appeal from Decision by United States Bankruptcy Court

ARTERTON, District Judge.

### I. Background

This is an appeal from a decision by the United States Bankruptcy Court (Krechevsky, J.) in an interpleader action brought by Pepsi–Cola Newburgh Bottling Co., Inc. ("Pepsi"). At issue is the garnishment sought by appellant Bristol Savings Bank ("Bristol Savings") of two payments owed by Pepsi pursuant to a non-competition agree-

ment with debtor Aaron P. Silver ("Silver"). Bristol Savings, Silver's creditor, claims ownership of the payments as a result of garnishments it served in April 1992. In opposition, appellees Elaine E. Silver and Paul Silver claim rights to the fund pursuant to assignments made to them by Silver subsequent to Bristol Savings's garnishments but before the dates scheduled for Pepsi's payments. After trial, the bankruptcy judge ruled that "judgment will enter that the garnishments made by the Bank on the plaintiff will fail because at the time of the garnishments there was no existing obligation of the plaintiff due the debtor." (Mem. Dec. at 14).

The issue presented in this appeal is as follows: Did the trial court correctly decide that the sums payable in January 1993 and January 1994 by Pepsi to Silver under the terms of a Non–Competition Agreement dated January 23, 1990, could not be garnished prior to the dates these sums were due to be paid and that, therefore, Bristol Savings' garnishments served in April 1992 were ineffective to secure satisfaction of Silver's debt to it? Stated differently, were the future payments due under the noncompetition agreement between Pepsi and Silver invalidly garnished?

*II. Jurisdiction*

■ Congress has provided that "[t] he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." 28 U.S.C. § 158(a). Appellee Novak, who is serving as bankruptcy trustee, argues that this Court lacks jurisdiction to hear the present appeal because the order appealed from is not "final" within the meaning of § 158(a).[1] Novak argues that the order is interlocutory in nature and, thus, only appealable with leave of the District Court.

■ The Second Circuit has articulated a flexible standard for "finality" in the bankruptcy context: "[B]ecause bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings, the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation." *In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir.1989). The Second Circuit has "recognized that Congress intended to allow for immediate appeal in bankruptcy cases of orders that 'finally dispose of discrete disputes within the larger case.'" *In re Sonnax Industries*, 907 F.2d 1280, 1283 (2d Cir.1990) (citations and emphasis omitted). "A 'dispute' in this context means at least an entire claim for which relief may be granted." *In re Flor*, 79 F.3d 281, 283 (2d Cir.1996).

Novak argues that the order is not final because the bankruptcy court's decision expressly pertained only to Bristol Savings' garnishment claim. The decision does not purport to adjudicate the rights of the other parties in the underlying interpleader action. Novak suggests that Bristol Savings will not be able to appeal as a matter of right until the bankruptcy court issues an order that definitively establishes the ownership of the disputed fund.

Notwithstanding Novak's argument, the Court finds that the bankruptcy court's order effectively concluded the interpleader action because the remaining parties reached a compromise on the disputed fund. (Appellant's Reply Br. at 1 n. 1 (citing Mem. Decision at 6)). As Bristol Savings observes, "[T]he Trial Court's interpleader judgment declaring Bristol Savings Banks's rights was a final judgment for the reason that it '[left] nothing for the Court to do but execute the judgment.'" (*Id.* (citation omitted)).

In ruling that the bankruptcy court's decision is appealable, this Court finds support in the Fourth Circuit's decision in *Nationwide Mutual Fire Insurance Co. v. Eason*, 736 F.2d 130 (4th Cir.1984). In *Eason*, the bankruptcy court faced an interpleader action in which a "disinterested stakeholder" asked that a disputed fund be returned to it. The court ruled against the stakeholder and

1. The other appellees, Aaron Silver, Paul Silver, and Elaine Silver, have not challenged the Court's jurisdiction.

directed the bankruptcy trustee to fashion an order apportioning the fund among other claimants. Although the court's decision left the ultimate apportionment of the fund unsettled, the Fourth Circuit held that the decision was sufficiently "final" to give it jurisdiction. *Id.* at 134 n. 6. In light of the agreement between the appellees, the bankruptcy court's order in the present case seems at least as final as the order in *Eason;* the Court therefore finds the order to be an appropriate subject for appeal.

### III. Standard of Review

The standard of review as to the trial court's conclusions of law is *de novo. In re Manville Forest Products Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990). However, the trial court's findings of fact must be accepted unless clearly erroneous. *Id.* Because this appeal tests legal conclusions, the *de novo* standard is applicable.

### IV. Discussion

#### A. Requirements for Garnishability

Connecticut law provides for a garnishment procedure known as "foreign attachment" in pending civil actions. Under this provision, "when a debt ... is due from any person to [the] defendant ... [the debt] shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover." Conn. Gen. Stat. § 52–329. Thus, this appeal poses the question of whether future payments due under the Non–Competition Agreement between Pepsi and Silver constituted a garnishable "debt" within the meaning of Connecticut's foreign attachment statute.

The Connecticut Supreme Court has recently articulated the following standards for determining what constitutes a garnishable "debt" under Connecticut's foreign attachment law:

> A writ of garnishment subjects to the claims of a creditor only a debt which, at the time of garnishment, was due to the underlying debtor....
>
> This court has liberally construed the word "due" in § 52–329 to mean "owing" rather than presently payable. A debt is owing and thus available for garnishment if the garnishee has an existing obligation to pay the debtor either in the present or the future. An obligation to pay the debtor in the future is "existing" if the garnishee's liability to pay the obligation is certain.... [T]he garnishee's otherwise certain liability is not made uncertain because the obligation may be diminished or defeated by a condition subsequent.
>
> Where, however, the garnishee's obligation is subject to a condition precedent, it is not an existing obligation because the condition renders the liability to pay the obligation uncertain in the sense that the condition may never be satisfied, and therefore, the garnishee may never become liable to pay the debtor.... This principle defeats garnishment of a debt where the garnishee's obligation is conditioned upon further performance, and as we have stated in the particular context of construction contracts, "money to become due upon the completion of a building contract is not subject to garnishment before the contract is completed."

*F & W Welding Service, Inc. v. ADL Contracting Corp.*, 217 Conn. 507, 515–17, 587 A.2d 92 (1991) (citations omitted)

Following the distinctions articulated in *F & W Welding,* the parties' dispute centers on whether Pepsi's obligations under the non-competition agreement amounted to a "certain liability" (even if subject to a condition subsequent), or, an "uncertain liability" because subject to a condition precedent. Under the standards set forth in *F & W Welding,* resolution of this question determines the garnishability of the payments at issue.

#### B. Terms of the Agreement

■ The degree of certainty of Pepsi's obligations under the Agreement is established under familiar principles of contract law. "Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in that contract and read in light of the circumstances surrounding the execution of the instrument." *Reid & Riege v. Brainerd Cashman Ins. Agency, Inc.*, 26

Conn.App. 580, 583, 602 A.2d 1051 (1992) (quoting *Ravitch v. Stollman Poultry Farms, Inc.*, 165 Conn. 135, 149, 328 A.2d 711 (1973)).

■ Any inquiry into the meaning of a contract must begin, and sometimes end, with the words of the contract itself. "Wherever the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Barnard v. Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990). In analyzing the intent of the parties as set forth in the Agreement itself, the Court finds several provisions to be of great significance. As to the payments due Silver under the Agreement, including the January 1993 and January 1994 payments that are presently at issue, the Agreement provides as follows in Paragraphs 1 and 2:

> 1. Purchaser [Pepsi] agrees to pay to Silver, or if he is not living to his estate, $1,250,000.00, payable in five annual installments in advance, each in the amount of $250,000 (the "Installment Payments"), with the first payment being made on the date hereof and the remaining installments on the same day of each succeeding calendar year commencing with the anniversary hereof.
>
> 2. In the event [of default or other specified circumstances] ... the entire unpaid balance of the Installment Payments shall be immediately due and payable, together with costs and attorney fees....

As to Silver's obligation not to compete, the Agreement provides as follows in Paragraph 3:

> Silver agrees that the remedy at law for any breach of the foregoing provisions will not be adequate and that the Purchaser will be entitled to injunctive relief in case

of any breach or threatened breach thereof....

The foregoing provisions imply a mutual exchange of independent promises, rather than a promise with a condition precedent. The language of installments, the first one being due before Silver himself was required to do anything under the Agreement (i.e., not compete); the fact that the full sum of Pepsi's obligation could become due immediately under certain circumstances; and the provision of the remedy of injunctive relief for Silver's breach of the non-compete agreement all suggest that neither party to the Agreement was required to do anything in order to render the other party's obligation fully mature. The Court can find no terms in the Agreement suggesting any contingency as to Pepsi's liability to pay the required sums.

The appellees argue strenuously that no "magic words" are necessary to create a condition precedent in an agreement and thus render an obligation non-garnishable.[2] While this may be correct, the Court finds that all of the cases cited by the appellees, with the possible exception of *Calechman v. Great Atlantic & Pacific Tea Co.*, 120 Conn. 265, 180 A. 450 (1935), involved agreements that, on their face, established real contingency as to the non-garnishable obligations, in contrast to the Pepsi–Silver Agreement. In *F & W Welding*, for instance, the agreement at issue provided for final payment of a contractor only "'after final inspection and acceptance by the [town] of all work under the contract.'" 217 Conn. at 510, 587 A.2d 92 (quoting language of contract) By contrast, the Pepsi–Silver agreement nowhere suggests that Pepsi was to review Silver's performance under the Agreement and condition payment upon the acceptability of such performance.[3] In *Sand–Blast File–Sharpen-*

---

**2.** By "the appellees," the Court refers primarily to appellees Elaine E. Silver, Aaron P. Silver, and Paul Silver, who have jointly filed a brief in this appeal. Appellee Anthony Novak, trustee of the debtor Aaron P. Silver, has also filed a brief, but his brief is substantially shorter than the joint brief and adds nothing of substance other than the objection to jurisdiction discussed *supra*.

**3.** Bristol Savings urges that these omissions are particularly telling in light of the fact that the Consulting Agreement executed between Pepsi and Silver on the same day as the Noncompeti-

tion Agreement contained precisely such conditional language. Paragraph Three of the Consulting Agreement reads as follows: "Subject to the compliance by Consultant with the terms and provisions hereof [pertaining to the provision of consulting services by Silver], the Company will compensate Consultant for the services to be rendered by him pursuant hereto over a period of five years at the rate of $100,000.00 per annum.... " (Appellant's Br. at 13.) Bristol Savings concludes that "[h]ad the parties wished to make Pepsi's obligation to pay subject to the

*ing Co. v. Parsons,* 54 Conn. 310, 7 A. 716 (1886), the agreement provided that the sales commissions at issue should only be paid "within ten days after the [employer] receives payment for the license sold," *id.* at 312, 7 A. 716. Payment to the employer was accordingly held to be a condition precedent to the employer's obligation to pay a commission. *Id.* The Pepsi–Silver agreement, by contrast, does not make Pepsi liable to Silver "after" any particular act by anyone; the first installment from Pepsi was due at the time of execution and subsequent installments were payable annually on the anniversary thereof. Except for *Calechman,* the other cases cited by the appellees are similarly distinguishable.

Ultimately, the appellees' position turns on the applicability of *Calechman* to the present case: if, as the trial court found, *Calechman* is somehow controlling, then Pepsi's obligations under the Agreement are subject to a condition precedent and hence are non-garnishable.

### C. Applicability of Calechman

*Calechman* involved a landlord-tenant relationship. Under the terms of a one-year lease, the tenant was to pay the landlord $250 monthly, payable in advance at the start of each month. During the course of the lease, a creditor of the landlord sought to garnish the tenant's rental payments, arguing that the tenant became immediately liable for $3000 upon execution of the lease. In rejecting this theory, the Supreme Court of Errors held, "In view of the nature of the obligation of a tenant to pay rent under a lease such as the one before us, we hold that rent to become due in the future is not an existing obligation or a debt presently owing within the meaning of the [foreign attachment] statute." 120 Conn. at 271, 180 A. 450.

The *Calechman* court distinguished *Goodman v. Meriden Britannia Co.,* 50 Conn. 139 (1882), in which garnishment was permitted under a contract in which the seller of certain trademarks "was to receive a definite monthly payment for ten years with a provision

that the payment of the sums was at all times to be dependent upon the vendee being fully secured in the exclusive use of the trademarks." *Calechman,* 120 Conn. at 272, 180 A. 450. The *Calechman* court found that the obligation of the *Goodman* vendor was to turn over the trademarks; once that was accomplished, the vendee's liability was fully mature and could only be defeated by the "condition subsequent" of loss of exclusive use of the trademarks. *Id.* The *Calechman* court held that payments due under a lease are different in that landlords are given a continuing obligation to provide for use and enjoyment of leased property. In effect, the *Calechman* court found that the lease in question was, as a matter of law, a promise to pay with a condition precedent.

Under the appellees' analysis, *Calechman* stands for the following proposition: when a contract involves an exchange of a promise to pay money at regular intervals for a promise to perform some other duty, the obligation to pay money is contingent and non-garnishable until the counterpart promise is fully discharged. The appellees see no material distinction between *Calechman* and the present case, and argue that Pepsi's obligations to pay, even though discharged in advance, were contingent until Silver completed a subsequent, corresponding year of noncompetition under the Agreement.

The appellees' reliance on *Calechman* faces numerous difficulties, not the least of which is the fact that the case is now more than sixty years old and seems never to have been read as broadly as the appellees would have the Court read it. Indeed, the appellees have not identified, and the Court has been unable to find, any more recent cases outside the landlord-tenant context in which *Calechman* has been found to be controlling. The Court is reluctant to expand the ambit of such an aged case as *Calechman* beyond the parameters long recognized by Connecticut courts.

Moreover, the language of *Calechman* itself suggests that the Supreme Court of Er-

---

contractual condition of Silver's continued performance," the parties knew very well how to do

it. *(Id.)*

rors never intended for the opinion to reach beyond the peculiar domain of real-estate leases. The holding of the case was articulated "[i]n view of the nature of the obligation of a tenant to pay rent under a lease such as the one before us." 120 Conn. at 271, 180 A. 450. The opinion further relied on various unique characteristics of "the common form lease ":

> [T]he obligation of the lessee to pay rent is a contingent one, made absolute only by the use and enjoyment of the property. . . . [I]n the absence of any stipulated period, the rent does not become payable until the lessee has enjoyed the possession for the full term of the lease. Where, under the terms of the lease, the rents are made payable at the end of fixed periods during the term, the possession and enjoyment must have continued to the end of each period.

*Id.* at 268–69, 180 A. 450. In deciding that rent payments were subject to a condition precedent, the *Calechman* court thus seems to have relied on a background body of property law that served to protect tenants by permitting them to withhold rent in the event of loss of quiet enjoyment of their property. However, the history and public-policy context of landlord-tenant agreements giving rise to this protective body of law is obviously unique; therefore, it is understandable that neither *Calechman* nor subsequent decisions have expressly broadened the holding of the opinion beyond the context of real-estate leases.

In other contexts, Connecticut courts have held that "garnishment statutes should be liberally construed." *Dorr-Oliver, Inc. v. Willett Associates*, 153 Conn. 588, 593, 219 A.2d 718, 721 (1966); *see also Dick Warner Cargo Handling Corp. v. Aetna Business Credit, Inc.*, 700 F.2d 858, 863 (2d Cir.1983). In light of this mandate, as well as the particular language and reasoning of *Calechman* itself, the Court does not believe that Connecticut law would broadly proscribe garnishment of all installment payments made pursuant to an agreement under which the payee still owes some duty to the payor at the time of the attempted garnishment. By the terms they agree to and the language

they use, the parties to such an agreement must be able to create a fully-mature, garnishable liability.

Even if *Calechman* were applicable outside the lease context, the present case is nonetheless distinguishable. The Pepsi–Silver agreement provided for acceleration of Pepsi's monetary obligations; called for continued payment to Silver's estate if Silver died; and established a right to injunctive relief on Pepsi's part, and not mere rescission of the payment schedule, for Silver's nonperformance. There is no suggestion in *Calechman* that the lease at issue contained analogous provisions.

Moreover, as Bristol Savings observes, a covenant not to compete differs from a lease in that the value of the non-competitor's performance gradually decreases over time as the value of a landlord's performance does not. This distinction parallels *Calechman*'s distinction of *Goodman*. As the *Calechman* court observed, the *Goodman* agreement was front-loaded: although the payments in *Goodman* were evenly distributed over a long period of time, the important underlying transfer of value occurred at the start of the agreement with the transfer of the trademarks. Similarly, the Pepsi–Silver deal was also front-loaded in that Silver's noncompetition was far more valuable at the beginning of the term of the Agreement than at the end. The lack of correspondence between the value of Pepsi's annual payments under the Agreement and the value of Silver's annual performance of his noncompetition obligation further distinguishes the Pepsi–Silver Agreement from the "standard form lease" at issue in *Calechman,* and renders less plausible the appellees' argument that Pepsi's annual payments were to correspond to, and be contingent upon, specific periods of noncompetition by Silver. In light of this and the other distinctive characteristics of the Pepsi–Silver agreement, the Court concludes that *Calechman* is not controlling of the present case.

### D. *The Nature of Pepsi's Obligation*

 The terms of the Pepsi–Silver agreement clearly and unambiguously created a fully-mature, if not immediately payable,

liability on Pepsi's part. Moreover, to the extent there is any uncertainty in the Agreement, the law generally presumes that dubious contractual language creates a promise rather than a condition. 3A Arthur L. Corbin, *Corbin on Contracts* § 635 (1960 & Supp.1996). Thus, the Court finds as a matter of law that the Agreement represented an exchange of promises, rather than a promise with a condition precedent. As *Calechman* does not otherwise compel a different conclusion, Pepsi's future obligations to Silver under the Agreement were sufficiently certain as to be garnishable under Conn. Gen.Stat. § 52–329 in April 1992.

### IV. Conclusion

For the reasons set forth above, the decision of the trial court is REVERSED. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.